United States District Court
Southern District of Texas
**ENTERED**
March 24, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BASKIN, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:22-cv-01075 |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| CITY OF HOUSTON and CHIEF TROY FINNER, | § | |
| Defendants. | § | |

OPINION AND ORDER
GRANTING MOTION TO DISMISS

The motion by Defendant City of Houston to dismiss this action for lack of standing is granted. Dkt 18.

1. Background

Plaintiff David Baskin is a former police officer for the Houston Police Department. He seeks to hold Defendants City of Houston and Chief of Police Troy Finner liable for issuing a no-contact order that temporarily prohibited him from contacting his wife. Baskin and his wife have since separated, with divorce proceedings either pending or perhaps already final.

At the time he filed this suit, Baskin and his wife had been married for nine years and had an eight-year-old son. Dkt 12 at ¶ 8. Their relationship seems to have been fraught with heated—and at times violent—arguments. One of these occurred on December 18, 2021. Baskin called the police in the midst of it, which resulted in HPD issuing a no-contact order against him that same day. Id at ¶ 10–11. The order forbade Baskin from contacting his wife by any means, including by phone or through a third-party.

Id at 18–19. It provided four exceptions, for (i) attending counseling sessions, (ii) complying with divorce-related court orders or settlement agreements, (iii) engaging in contact that pending litigation made unavoidable, and (iv) carrying out any other court orders. Id at 18.

The no-contact order was to remain in effect unless rescinded or modified. It contained no provisions concerning contact with Baskin's son. And it directed Baskin to "immediately contact the on-call [Internal Affairs Division] supervisor for guidance" if he had any questions concerning the order. Ibid.

Baskin filed suit in April 2022. The no-contact order was at that time still in effect. He at first sought to enjoin enforcement of the order, asserting a claim under Section 1983 for infringement of his right to intimate association. Dkt 1. But he was subsequently fired from HPD, with his termination date apparently being June 15, 2022. See Dkt 12 at ¶ 22. That termination also ended the no-contact order, it having been "contingent upon [his] employment as a Police officer." Id at ¶ 13. Baskin thus amended his complaint to remove his request for injunctive relief. He now seeks damages for the purported injuries he suffered while the no-contact order was in effect.

Baskin alleges two injuries arising from the no-contact order. First, he notes that he and his wife had a history of reconciling "with open and honest communication," but that the no-contact order prohibited him from contacting his wife while in effect—and thus, he says, prevented such reconciliation. Second, he asserts that the order hindered regular contact with his son, "effectively den[ying him] of his parental rights." Id at ¶¶ 12, 22. Baskin seeks damages for past and future mental anguish and loss of consortium. Id at ¶ 36.

The City moves to dismiss under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, regarding lack of standing and failure to state a claim, respectively. Dkt 18. Notably, the Fifth Circuit recently affirmed dismissal under Rule 12(b)(6) of a nearly identical intimate-association claim brought by a former police

2

officer. *Lewis v. Smith*, 2022 WL 10965839 (5th Cir) (unpublished). But whether Baskin has stated a plausible claim needn't be considered because it's determined below that he lacks standing to assert a claim under Section 1983.

2. Legal standard

Subject-matter jurisdiction is inherently a threshold matter. *Steel Co v Citizens for a Better Environment*, 523 US 83, 94–95 (1998), quoting *Mansfield, Coldwater & Lake Michigan Railway Co v Swan*, 111 US 379, 382 (1884). This is because federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001), citing *Kokkonen v Guardian Life Insurance Co of America*, 511 US 375, 377 (1994). A decision to hear a case that's beyond the subject-matter jurisdiction of a federal court isn't a "mere technical violation," but is instead "an unconstitutional usurpation" of power. Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 3522 (West 3d ed April 2022 update).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack of subject-matter jurisdiction. Consideration of a motion under Rule 12(b)(1) isn't limited simply to the facts pleaded in the complaint, but may instead include any evidence submitted by the parties, such as affidavits, testimony, and documents. *Kasali v FBI,* 2017 WL 6343654, *2 (SD Tex 2017); *Paterson v Weinberger,* 644 F2d 521, 523 (5th Cir 1981). Discretion also exists to weigh any competing evidence based on credibility assessments. *Williamson v Tucker,* 645 F2d 404, 413 (5th Cir 1981) (citation omitted). This means that dismissal for lack of subject-matter jurisdiction may proceed based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ibid.

Dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer*

3

*Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998) (internal quotations omitted). The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that it is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008). Indeed, a presumption against subject matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

Challenge under Rule 12(b)(1) extends to the standing of the plaintiff to assert a claim. *Moore v Bryant*, 853 F3d 245, 248 n 2 (5th Cir 2017). A plaintiff must establish standing because the United States Constitution vests power in the federal courts to adjudicate only "Cases" and "Controversies." Art III, § 2. The burden is squarely upon the party asserting a claim in federal court to establish Article III standing by showing that (i) he's suffered an injury in fact, (ii) the injury is fairly traceable to the challenged conduct, and (iii) the injury is likely be redressed by a favorable decision. *Lujan v Defenders of Wildlife*, 504 US 555, 560–61 (1992); *Spokeo Inc v Robins*, 578 US 330, 338 (2016), citing *FW/PBS, Inc v Dallas*, 493 US 215, 231 (1990). This means that the plaintiff must clearly allege facts at the pleading stage that demonstrate each criterion. *Spokeo*, 578 US at 338, quoting *Warth v Seldin*, 422 US 490, 518 (1975).

    3. Judicial notice

The City attaches to its motion several documents submitted from the Baskins' divorce proceedings that contain facts outside the pleadings. It requests judicial notice of these documents mainly in support of its argument that Baskin lacks standing. Dkt 18 at 10–11. Baskin doesn't oppose this request. Dkt 20 at 3. Notice is thus appropriately taken of the submitted documents. See also *Ramming*, 281 F3d at 161: "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute."

4

The documents from the divorce proceedings establish that both Baskin and his wife filed for divorce on January 11, 2022. See Dkts 18-1 & 18-2. This was less than a month after the no-contact order was issued and several months before Baskin filed this lawsuit. As grounds for divorce, Baskin in his petition stated, "The marriage has become insupportable because of discord or conflict of personalities between Petitioner and Respondent that destroys the legitimate ends of the marriage relationship and *prevents any reasonable expectation of reconciliation*." He also stated that his wife had treated him cruelly, rendering "living together insupportable." Dkt 18-2 at 3; see also Dkt 18-1 at 118.

His wife's petition contained identical provisions. It further noted that the Baskins ceased living together on December 18th, 2021. Dkt 18-1 at 3. And it included a cause of action for assault against Baskin, related to his conduct that day. Id at 12–13. Also attached to the petition was an affidavit in which Baskin's wife claimed that she was brutally assaulted during the incident that prompted issuance of the no-contact order. Dkt 18-1 at 17 (and also referencing history of drinking and assault by both Baskins). But see Dkt 20 at 7 (Baskin response, asserting that he was one assaulted). The affidavit also claims that Baskin took their child on December 18th and prevented her from seeing him for over two weeks until January 5th. And she says that Baskin's parents have assisted in "kidnapping" in the past, with the implied suggestion being that the child was taken to stay with Baskin's parents on this occasion. Ibid.

Who in fact had possession of the son while the no-contact order was in effect is disputed and not clear from the record. Baskin claims he didn't have possession of his son during that time. Dkt 20 at 9–10. Based on the referenced affidavit, the City for its part argues that Baskin had the child. Dkt 18 at 25. What's more, the City in its reply broadly states, "Plaintiff kept his son for the duration of any no contact order"—even though the

5

affidavit only references a narrow span of dates from mid-December 2021 to early-January 2022. Dkt 22 at 5.

Of note, Baskin's wife filed for divorce once before, in August 2016. Dkt 18-3. Baskin also says that he, too, filed for divorce in April 2017. Dkt 12 at 3–4. They apparently reconciled in each instance.

### 4. Analysis

The City's primary argument is that Baskin hasn't "alleged an injury in fact fairly traceable to the temporary directive." Dkt 18 at 9. This is correct. The only two injuries alleged by Baskin in his complaint relate to the relationship with his wife (and the possibility of their reconciliation) and with his son. To the extent there was any injury, it isn't fairly traceable to the no-contact order.

*As to the relationship with his wife,* the competing divorce petitions filed in January 2022 foreclose any possibility that a causal connection exists between the no-contact order and the loss of intimate association between Baskin and his wife. The Supreme Court long ago noted that "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 US at 560 (cleaned up). The Fifth Circuit has noted in accord that "standing cannot be conferred by a self-inflicted injury." *Zimmerman v City of Austin*, 881 F3d 378, 389 (5th Cir 2018).

Viewed in such light, any damage to the relationship between these volatile spouses isn't fairly traceable to any action by the City. By all indications, the two were bound for separation and divorce regardless of whether the City issued the no-contact order. The harm to their relationship is thus attributable to how they treated each other the day that the no-contact order was issued—along with the months and years that led up to that day.

Baskin does assert that the order prevented him from reconciling with his wife. But such contention is belied by his own petition in the divorce proceedings. He there flatly indicated that the marriage was "insupportable because of

6

discord or conflict of personalities" between him and his wife; that his wife had treated him cruelly, rendering "living together insupportable"; that "the legitimate ends of the marriage relationship" no longer existed; and that all of this "prevent[ed] *any* reasonable expectation of reconciliation." Dkt 18-2 at 3 (emphasis added). It's quite implausible for Baskin now to suggest that he desired reconciliation and would have sought it—much less attained it—but for the no-contact order.

More importantly, the no-contact order on its face didn't prevent Baskin from seeking reconciliation if he desired it. One of the exceptions to the bar on communication allowed for "[c]ounseling sessions with the HPD Psychological Services Unit or other licensed counselors." Dkt 12 at 18. Such provision plainly allowed legitimate attempt at reconciliation through counseling—had Baskin sought it. But there's no indication that he did.

*As to the relationship with his son,* the no-contact order had no bearing on whether Baskin could contact his son. It solely prohibited contact between him and his wife. And as noted above, who had possession of the son at particular times is disputed.

This dispute needn't be resolved, however, because Baskin fails to carry his burden of showing that any injury to his relationship with his son was fairly traceable to the no-contact order. The order contains this verification from Baskin: "I also understand that should I have any questions concerning any provision of this order, I will immediately contact the on-call IAD supervisor." Id at 19. It also states, "This order will remain in effect until rescinded *or modified* by a subsequent written order specifically referring to this order." Ibid (emphasis added).

There's no indication in the record that Baskin sought either clarification or modification of the order to allow contact with his son. This is important, because at least one signed order from the divorce filings strongly implies that Baskin was permitted to see the child. See Dkt 42-14 at 5 (temporarily restraining either party from "[h]iding or secreting the child from the other party"). And indeed, the

7

no-contact order on its face stated an exception for compliance with court orders. See Dkt 12 at 18.

     5. Conclusion

No putative injury to Baskin is fairly traceable to the HPD's no-contact order.

The motion by Defendant City of Houston to dismiss for lack of standing is GRANTED. Dkt 18.

The complaint by Plaintiff David Baskin against Defendants City of Houston and Chief Troy Finner is DISMISSED WITHOUT PREJUDICE.

A final judgment will issue by separate order.

SO ORDERED.

Signed on March 24, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge